## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

DENISE A. ROSALES, individually and on behalf of herself and all others similarly situated,

     *Plaintiff*,

v.

CHRISTINE WORMUTH, Acting Secretary of the Army, in her official capacity; DEPARTMENT OF THE ARMY; GREGORY D. FORD, Acting Director of the Department of the Army Criminal Investigation Division, in his official capacity; DEPARTMENT OF THE ARMY CRIMINAL INVESTIGATION DIVISION; CHRISTOPHER WRAY, Acting Director of the Federal Bureau of Investigation, in his official capacity; FEDERAL BUREAU OF INVESTIGATION; LLOYD J. AUSTIN III, Acting Secretary of Defense, in his official capacity; DEPARTMENT OF DEFENSE and UNKNOWN OFFICERS and EMPLOYEES OF THE DEPARTMENT OF DEFENSE and FEDERAL BUREAU OF INVESTIGATION, in their individual capacities.

     *Defendants*.

Civ. Action No. 1:23-cv-00440-RP

## THIRD AMENDED CLASS ACTION COMPLAINT

### I.    NATURE OF THE CASE

1.    This lawsuit is about whether the federal government may create false records of arrest—records used to determine everything from job eligibility to security clearances—and simply refuse to correct them.

2.    Plaintiff Denise A. Rosales is a non-commissioned officer in the Texas Army

National Guard. After an alleged minor incident prompted an investigation, the Department of the Army Criminal Investigation Division ("Army CID") submitted a record to the Federal Bureau of Investigation indicating that Ms. Rosales had been arrested. Federal criminal history databases maintained by the FBI now show that Ms. Rosales had been "arrested or received" into custody.

3.      The records of arrest are false. Ms. Rosales was never arrested or received into custody. Defendants do not dispute that fact.

4.      Ms. Rosales has spent the better part of two years jumping through administrative hoops trying to get this false and unlawful record corrected. But Army CID has refused to amend Ms. Rosales's records despite her pleas. This refusal is inexplicable since there is no dispute that Ms. Rosales has never been arrested.

5.      Ms. Rosales is not alone in her plight. Defendants have created and maintained false arrest reports for thousands of service members who were never placed into custody. Unfortunately, Defendants have shown that they would rather indulge in bureaucratic inertia rather than fix a problem that has now destroyed the lives, reputations, and careers of numerous service members.

## II.    PARTIES

6.      Plaintiff Denise A. Rosales ("Ms. Rosales") is a resident of Hildago County, Texas.

7.      Defendant Christine Wormuth is the acting Secretary of the Army. She is sued in her official capacity. She may be found at 101 Army Pentagon, Washington, DC 20310-0101.

8.      Defendant Department of the Army (hereinafter, "DoA," or "Army") is an agency of the United States, headquartered at 101 Army Pentagon, Washington, DC 20310-0101.

9.      Gregory D. Ford is the acting Director of the Department of the Army Criminal Investigation Division. He is sued in his official capacity. He may be found at 27130 Telegraph

Road, Quantico, VA 22134-2253.

10.     Defendant Department of the Army Criminal Investigation Division (hereinafter, "Army CID") is an agency of the United States, headquartered at 27130 Telegraph Road, Quantico, VA 22134-2253.

11.     Defendant Christopher Wray is the acting Director of the Federal Bureau of Investigation. He is sued in his official capacity. He may be found at 935 Pennsylvania Avenue, NW, Washington, DC 20535-0001.

12.     Defendant Federal Bureau of Investigation (hereinafter, "FBI") is an agency of the United States, headquartered at 935 Pennsylvania Avenue, NW, Washington, DC 20535-0001.

13.     Lloyd J. Austin III is the acting Director of Defense. He is sued in his official capacity. He may be found at 1000 Defense Pentagon, Washington, DC 20301-1000.

14.     The Department of Defense (hereinafter "DoD") is an agency of the United States, headquartered at 1000 Defense Pentagon, Washington, DC 20301-1000.

15.     Officers and employees of the DoD and FBI, currently unknown, were responsible for creating a false criminal history record stating that Ms. Rosales was arrested when in fact she was not. They are sued in their individual capacities. Upon information and belief, they may be found at the addresses for the DoD and FBI listed above.

### III.    JURISDICTION & VENUE

16.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1346, and 1361, 5 U.S.C. § 552a(g)(1), and 5 U.S.C. §§ 702–704.

17.     Defendants' sovereign immunity has been waived pursuant to 5 U.S.C. § 702 and/or the Privacy Act. 5 U.S.C. § 552a(g).

18.     Venue lies in this district pursuant to 28 U.S.C. § 1391 because Ms. Rosales was a

resident of this judicial district at the original time of filing.

## IV.    FACTUAL BACKGROUND

### A.  The Military's History of Creating False Arrest Records.

19.    The military's long history of falsely reporting that soldiers have been arrested or received into custody is traceable to the aftermath of the Sutherland Springs mass shooting in 2017. After an Air Force veteran named Devin Kelley managed to obtain a firearm and killed 26 people, investigators discovered that the Air Force had failed to "ensure that Kelley's fingerprints and criminal history were submitted to the FBI's Criminal Justice Information Services ('CJIS') Division for inclusion in its databases." *Holcombe v. United States*, No. SA-18-CV-555-XR, 2021 WL 2821125, at *1 (W.D. Tex. July 6, 2021).

20.    Thereafter, the DoD Inspector General recommended the review of and implementation of programs to enhance the procedures for collection and submission of fingerprints and criminal histories to the FBI's CJIS Division.[1] But in typical military fashion, all the services overcompensated, especially the Army.

21.    Army Regulation ("AR") 195-2 establishes numerous investigative and information gathering responsibilities of all personnel assigned to Army CID elements, including compliance with Department of Defense Instruction ("DoDI") 5505.11.

22.    DoDI 5505.11 prescribes procedures for DoD law enforcement to report criminal history data. This policy requires that, upon a determination of probable cause, all service members who are investigated for a range of offenses listed in the Uniform Code of Military Justice ("UCMJ") as punishable by imprisonment must have their fingerprints and criminal history record

---

[1] REPORT OF INVESTIGATION INTO THE UNITED STATES AIR FORCE'S FAILURE TO SUBMIT DEVIN KELLEY'S CRIMINAL HISTORY INFORMATION TO THE FEDERAL BUREAU OF INVESTIGATION, https://media.defense.gov/2018/Dec/07/2002070069/-1/-1/1/DODIG-2019-030_REDACTED.PDF (last visited Oct. 19, 2023).

information ("CHRI") collected.

23.     DoDI 5505.11 also instructs that Federal Document (FD)-249 ("Arrest and Institution Fingerprint Card") be used to collect this information.[2] A completed FD-249 form must then be transmitted to the FBI's CJIS Division, which operates the National Crime Information Center ("NCIC"), a national criminal justice information system that administers various databases.

24.     Of course, nothing in DoDI 5505.11 directs or authorizes that any branch of the armed forces report to the FBI that a service member has been arrested if that did not in fact occur. But that is exactly what happens. Once the FD-249 form is transmitted to the FBI, the service member—who may have been investigated for virtually any type of UCMJ infraction but never arrested—is listed in the FBI's NCIC system as having been arrested.

25.     Upon information and belief, the FBI automatically lists service members as having been "arrested" in NCIC databases upon receipt of the FD-249 form. Of note, the FD-249 is titled "Arrest and Institution Fingerprint Card"[3] and states that it "is to be used for criminal justice purposes, such as incident to arrests and incarcerations."[4]

26.     Whether a service member was arrested or not, the FBI makes that arrest record available to various governmental and nongovernmental entities. *See* 28 C.F.R. § 20.33.

27.     The creation of false arrest records in the FBI's NCIC databases is no secret. In fact, it is an admitted problem. After years of complaints, Army leaders held a press conference on November 3, 2022, to acknowledge the problem and admitted that false criminal history reports had been created for *at least* 900 people.

---

[2] *See* **Exhibit C**, FD-249 (providing a blank copy of the form).
[3] *See* ARREST AND INSTITUTION FINGERPRINT CARD, https://www.fbi.gov/file-repository/fd-249.pdf/view (last visited October 26, 2023).
[4] *See* **Ex. C**, at 2.

28.     Gregory Ford, Director of Army CID, was one of the Army representatives to discuss Army CID's failures. As he stated, "[I]n many instances, those [procedures] were not followed. So, that is why we're saying they inaccurately, inappropriately entered into that III system, which reflects as an arrest."[5]

29.     National media outlets have estimated that Army CID has created false criminal history and arrest record entries on upward of 2,400 Soldiers, veterans, and civilians.[6] Ms. Rosales is one of those individuals.

**B.  Army CID and the FBI Created a False and Illegal Arrest Record for Ms. Rosales.**

30.     In the 12 years before she was falsely listed as having been arrested, Ms. Rosales worked as an analyst supporting various law enforcement agencies, including the Drug Enforcement Administration ("DEA"). In 2017, Ms. Rosales attended and graduated from the DEA's Basic Intelligence Research Specialist Course. She loved her work and hoped for permanent employment with a federal law enforcement agency.

---

[5] **Exhibit A**, Director Ford Transcript, at 15.
[6] *See* Hanna Lambert, *Congress is 'afraid' to stand up for soldiers slapped with false arrest record, Rep. Gohmert says*, FOX NEWS (Oct. 19, 2022), https://www.foxnews.com/politics/congress-afraid-stand-soldiers-slapped-false-arrest-record-rep-gohmert; Cory Dickstein, *Army CID agents wrongly entered hundreds of soldiers into criminal database during recruiting scandal investigation*, STARS AND STRIPES (Nov. 3, 2022), https://www.stripes.com/branches/army/2022-11-03/army-soldiers-fbi-recruiting-investigation-7912895.html; Hannah Lambert, *'Looking for scalps': Green Beret never charged with a crime ends up with murder on background check*, FOX NEWS (Sep. 23, 2022),  https://www.foxnews.com/us/looking-scalps-green-beret-never-charged-crime-ends-murder-background-check.



Wendy Davis (left), a Drug Enforcement Administration intelligence research specialist, stands with Army National Guard Staff Sgt. Denise Rosales (right).

31.     From June 2020 to February 2021, Ms. Rosales deployed to Kuwait as a federalized member of the Texas Army National Guard.

32.     While in Kuwait, Ms. Rosales held a birthday party for her husband. Because the birthday party involved the alleged presence of alcohol, Ms. Rosales was investigated for misconduct and received an administrative reprimand.

33.     Ms. Rosales was never "informally" or formally arrested, taken into custody, or received into custody. Absolutely no authority found probable cause to arrest or take Ms. Rosales into custody, no probable cause affidavit was ever created, and there is no record of Ms. Rosales being arraigned, "magistrated," or having an initial appearance in any military or civilian court. Ms. Rosales was never restricted, confined to quarters, suspended from duties, or disarmed. When all was said and done, Ms. Rosales received no punishment or sanction other than an administrative reprimand.[7]

34.     Despite never being arrested or taken into custody, the FBI's NCIC records—based on  information transmitted by Army CID—states that she was "ARRESTED OR RECEIVED"

---

[7] [7] **Exhibit B**, Rosales Affidavit, at 1.

on "2021/01/05" related to "AGENCY CASE-132-2020-MPI709" and a charge of "FALSE OFFICIAL STATEMENTS."[8]

**C. The Army Refuses to Amend Ms. Rosales's Records.**

35.    Although AR 195-2 requires notice to all persons listed in subject and/or suspect fields that the FD-249 cards collected have been submitted to the FBI CJIS Division "and the fact that such use may have an impact upon their military or civilian careers," Ms. Rosales received no such notice.

36.    Once Ms. Rosales learned about the false arrest record, she first tried to correct the problem by having her counsel contact an Army JAG officer. In a May 4, 2021 email, Lieutenant Colonel Dale McFeatters confirmed that Ms. Rosales had not been arrested.[9]

Sir-

She was not placed under arrest.  MPI investigated the incident, not CID,
though CID may have assisted in taking finger prints.

r/
Dale

r/
LTC Dale McFeatters
Deputy Staff Judge Advocate

37.    However, Ms. Rosales's records were not corrected, so Ms. Rosales sought relief through the Privacy Act (5 U.S.C. § 552a) and relevant Army regulations. By a letter dated November 1, 2021, Ms. Rosales, through counsel, wrote to Army CID seeking amendment of her FBI NCIC arrest record on the grounds that it was not accurate.[10]

---

[8] *See* **Exhibit D**, FBI Record, p. 4–5 (Ms. Rosales's FBI Record is a record pursuant to 5 U.S.C. § 552a(a)(4)).

[9] *See* **Exhibit E**, LTC McFeatters Admission, at 4.

[10] **Exhibit F**, Privacy Act Amendment Request.

38.    Ms. Rosales's request for amendment fell on deaf ears. By a letter dated November 16, 2021, Army CID denied Ms. Rosales's request for amendment. The denial letter did not respond to Ms. Rosales's grounds for amendment.[11]

39.    By a letter dated November 22, 2021, Ms. Rosales, through counsel, appealed from this denial of amendment.[12]

40.    On or about December 21, 2022, over a year after submitting the appeal, Ms. Rosales received a letter from the Office of the General Counsel of the DoA denying her appeal. The denial letter did not respond to Ms. Rosales's grounds for amendment.[13]

41.    Further, on a conference call on January 19, 2023, and in an email dated January 20, 2023, counsel for Ms. Rosales brought her false NCIC arrest record to the attention of Colonel Lance B. Turlington—Command Judge Advocate of U.S. Army Human Resources Command—and Colonel Robert G. Levy, Jr.—Chief Counsel of Army CID.[14]

42.    Yet again, Ms. Rosales's efforts went nowhere. In an email dated February 2, 2023, Colonel Turlington pointed counsel for Ms. Rosales to the same appeals process through Army CID that she had already engaged in and exhausted.[15]

43.    Colonel Turlington's email also explains the simple solution to correcting this false and illegal NCIC record. Army CID could simply pull back the FD-249 fingerprint card that it used to create the entry in the FBI's NCIC database.[16] However, Army CID has refused to implement this solution.

---

[11] **Exhibit G**, Denial of Privacy Act Amendment Request.
[12] **Exhibit H**, Privacy Act Appeal.
[13] **Exhibit I**, Denial of Privacy Act Appeal.
[14] *See* **Exhibit J**, JAG Officer Email Exchange, at 2.
[15] *See* **Ex. J**, at 4 (the redacted information pertains to other citizens with false criminal history records initiated by Army CID).
[16] *See id.*

**D. Ms. Rosales has Suffered Irreparable Harm Because of her False, Illegal Arrest Record.**

44.    As a result of the false criminal history record and bureaucratic intransigence, Ms. Rosales has suffered numerous occupational and personal detriments.

45.    First, Ms. Rosales lost her position of employment supporting the DEA.[17]

46.    Further, Ms. Rosales has not been able to return to her full-time Active Duty Operational Support ("ADOS") position in the Texas Army National Guard. Ms. Rosales's inability to return to ADOS hinders her ability to obtain an active-duty retirement.[18]

47.    The false criminal history report hinders and negates Ms. Rosales's ability to obtain future employment in the public sector and requisite security clearances. Indeed, Ms. Rosales's false arrest record has prevented her from serving as an intelligence analyst and from obtaining access to at least one Texas Department of Public Safety facility.[19]

48.    Ms. Rosales has and will continue to suffer other additional adverse effects stemming from her false, illegal arrest record, including but not limited to extreme mental anxiety, harm to her reputation, and her inability to act as a chaperone at various functions for her children.

49.    To remedy and avoid these and further harms, Ms. Rosales must ask this Court for relief requiring Defendants to cease the dissemination of and expunge her false, illegal arrest record. If needed, Defendants are capable of adhering to other existing procedures or the creation of new, more accurate procedures to ensure that relevant, accurate criminal histories are appropriately disseminated.

---

[17] *See* **Ex. B**, at 1.
[18] *See* **Ex. B**, at 1–2.
[19] *See* **Ex. B**, at 2.

## V.     CLASS ALLEGATIONS

50.     Ms. Rosales brings her Due Process claims individually and on behalf of a class defined as follows:

> All U.S. Army service members who have been reported as having been arrested or received into custody by any Department of Defense organization to the FBI, but who were not actually arrested or received into custody from six years prior to the filing of the complaint through the date of judgment.

51.     The Class is ascertainable because class members can be easily identified through records maintained by Defendants. For example, records of all service members who were reported to the FBI as having been arrested or being received into custody may be easily cross-referenced with a list of all service members who were actually booked, processed, and arrested for an alleged offense.

52.     The Class is so numerous that joinder of all members is impracticable. On information and belief, the number of Class Members is over 2,400. The joinder of Class members is impractical due to the size and relatively modest value of each individual claim.

53.     There are questions of law or fact common to the class that predominate over any questions affecting only individual Class Members. Those common questions of law and fact include, but are not limited to, the following:

   a.   Whether Defendants have a policy and practice of falsely reporting to the FBI that Class Members have been arrested or received into custody when in fact they have not;

   b.   Whether Defendants' policies and procedures for correcting or amending Class Members' false arrest records are adequate;

   c.   Whether Defendants and unknown federal officers arbitrarily failed to correct Ms. Rosales's and the Class Members' records that falsely report arrests despite knowing they were in fact not placed under arrest or taken into custody.

54.     The claims or defenses of Ms. Rosales are typical of the claims or defenses of the class in that they arise out of the same factual and legal theories. Typicality does not require that the claims of the class members be identical to the claims of a class representative, only that the disputed issues are as central to a named plaintiff's claims as they are to the class members she seeks to represent. Indeed, the relief sought would benefit all class members in an identical manner.

55.     Ms. Rosales will fairly and adequately protect the interests of the class. Like other Class Members, she has suffered from the creation, maintenance, and dissemination of false arrest records. She has no interests that are antagonistic to any Class Member and retained competent counsel to advance the interests of both herself and the Class.

56.     Defendants have acted on grounds applicable to the Class, thereby making final injunctive and declaratory relief with respect to the Class as a whole appropriate. Specifically, Defendants have admittedly failed to correct records falsely stating that thousands of service members have been arrested or taken into custody when they in fact have not.

### CLAIMS FOR RELIEF

### COUNT I
**Violation of the Fifth Amendment—Procedural & Substantive Due Process
(Against All Defendants)**

57.     Ms. Rosales and the Class incorporate by reference all preceding paragraphs. Ms. Rosales brings this claim individually and on behalf of all Class Members.

58.     The Due Process Clause of the Fifth Amendment guarantees that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V. "The touchstone of due process is protection of the individual against arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974). This is so "whether the fault lies in a denial of fundamental procedural fairness ... or in the exercise of power without any reasonable

justification in the service of a legitimate governmental objective." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998).

59.     As set forth herein, Defendants' actions have deprived Ms. Rosales and Class Members of their liberty and property interests within the meaning of the Due Process Clause of the Fifth Amendment. *See Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Specifically, and among other interests, Ms. Rosales and Class Members have a constitutionally protected interest in "a person's good name, reputation, honor, or integrity." *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971). Ms. Rosales and Class Members have lost jobs, job opportunities, security clearances, had their promotions held up, suffered the stigma of having an arrested record, and have had a change in legal status from a law-abiding citizens and service members to persons with a (nonexistent) criminal history.

### A.     Procedural Due Process

60.     "Procedural due process rules are meant to protect persons not from the deprivation, but from the *mistaken or unjustified* deprivation of life, liberty, or property." *Carey v. Piphus*, 435 U.S. 247, 259 (1978). That is precisely the problem here. Defendants' constitutionally deficient procedures have resulted in the creation, maintenance, and distribution of false arrest records that wrongfully deprive Ms. Rosales and Class Members of their protectible interests.

61.     For example, DoDI 5505.11 results in lumping together individuals like Ms. Rosales, who was not arrested, with individuals who were arrested. That is because the instruction fails to provide any parameters for distinguishing between persons who were arrested or not arrested. Rather, for every person for whom a determination of probable cause is made—arrested or not—Defendants create a fingerprint card indicating an arrest and transmit it to the FBI where it becomes an arrest record.

62.    DoDI 5505.11 also states that "when required, a Privacy Act statement will be provided to each individual whose personal data is collected…." However, when that is "required" is a mystery. Ms. Rosales received no such Privacy Act statement, or any other notice that she would be falsely reported in official government documents as having been arrested.

63.    Defendants do not provide (or do not follow) adequate procedures to oppose, correct, or challenge the creation, maintenance, and dissemination of false arrest records once created. Indeed, despite Ms. Rosales's repeated formal and informal requests that the Defendants correct, withdraw, or otherwise stop disseminating false arrest records, her requests have fallen on deaf ears. Defendants continue to report, maintain, and distribute her false arrest record to current and prospective employers, among other persons and entities.

64.    As a result of Defendants' failures to implement any adequate procedures, Ms. Rosales and the Class have lost employment opportunities, suffered the stigma of having an arrested record, have had a change in legal status from law-abiding citizens and service members to persons with inaccurate or nonexistent arrest records and criminal history, and they will continue to be harmed unless they are afforded prompt remedy.

65.    Ms. Rosales and the Class are entitled to declaratory and injunctive relief under this claim pursuant to 28 U.S.C. §§ 2201–2202.

**B.    Substantive Due Process**

66.    By creating, maintaining, and disseminating false records of arrest, and refusing to correct those records, Defendants' actions are arbitrary, unreasonable, or have no relationship to a legitimate government interest.

67.    Clearly, Defendants have no legitimate governmental interest in falsely reporting in national databases that service members have been arrested or received into custody. On the

contrary, Defendants have an interest in maintaining complete, accurate, and current records as required under various federal laws, rules and regulations. *See, e.g.,* 28 C.F.R. § 20.37; 18 U.S.C. § 1001 (making it a crime to enter a materially false statement into a government record).

68.    Given the fact that Defendants are well aware of this pervasive problem, their refusal to stop, remedy, or correct this practice is arbitrary, unreasonable, and shocks the conscience .

69.    Indeed, Defendants' refusal to indulge Ms. Rosales's requests to correct, amend, or expunge her arrest records is especially shocking because Defendants *know* that she was not arrested. An Army JAG Officer admitted as much as to counsel for Ms. Rosales, and Army CID admitted that these errors occurred Army-wide. Despite Ms. Rosales's repeated requests that the Army correct the record and that the FBI stop disseminating it, Defendants continue to report and distribute the false arrest record to current and prospective employers, among other persons and entities.

70.    Yet, despite having actual knowledge of the falsity of Ms. Rosales's records and the records of Class Members, Defendants persist in their refusal to do anything about the problem. This head-in-the-sand approach can only be described as arbitrary and unreasonable at best, or bureaucratic bad faith or ill-will at worst.

71.    Ms. Rosales and the Class are entitled to declaratory and injunctive relief under this claim pursuant to 28 U.S.C. §§ 2201–2202.

**COUNT II**
**Violation of the Privacy Act, 5 U.S.C. § 552a**
**(Against the Department of the Army, Christine Wormuth, the Department of the Army**
**Criminal Investigation Division, and Gregory Ford)**

72.    Ms. Rosales incorporates by reference all preceding paragraphs.

73.    The Privacy Act, 5 U.S.C. § 552a, "'safeguards the public from unwarranted

collection, maintenance, use and dissemination of personal information contained in agency records ... by allowing an individual to participate in ensuring that his records are accurate and properly used.'" *Jacobs v. National Drug Intelligence Center*, 423 F.3d 512, 515 (5th Cir.2005) (quoting *Henke v. U.S. Dep't of Commerce*, 83 F.3d 1453, 1456 (D.C.Cir.1996)). The Privacy Act encompasses causes of action for (1) an agency's failure to amend an individual's records pursuant to his request; (2) an agency's failure to maintain an individual's records with accuracy, relevance, timeliness, and completeness; and (3) an agency's failure to comply with other Privacy Act provisions, which has "an adverse effect on the individual. *See id*; 5 U.S.C. § 552a(g)(1)(A)-(D).

74.    Ms. Rosales is authorized to bring claims pursuant to the Privacy Act because she has exhausted her administrative remedies. 5 U.S.C. § 552a (g)(1)(A). Defendants have made a final determination not to amend her records and/or failed to make such a review in conformity with the Privacy Act's requirements. 5 U.S.C. § 552a(d)(2)-(3).

**A. Failure to Amend**

75.    In her record amendment request and subsequent appeals, Ms. Rosales offered Lieutenant Colonel Dale McFeatters's admission that she was never arrested. Indeed, there is no evidence she was ever arrested because it never happened.

76.    Despite clear evidence that Ms. Rosales was never arrested, Defendants failed to make a review in accordance with Ms. Rosales's request, yet still managed to make a final determination not to amend her false arrest record in accordance with her request.

77.    As a result of Defendants' determination not to amend Ms. Rosales's false arrest record or to even make a review in accordance with her request, Ms. Rosales has suffered the harms alleged herein.

78.    Thus, Ms. Rosales is entitled to have this Court order Defendants to amend her false

16

arrest record in accordance with her request or in such other way as the Court may direct. *See* 5 U.S.C. § 552a(g)(2)(A).

79.     Ms. Rosales is further entitled to attorney's fees and other litigation costs for this claim pursuant to U.S.C. § 552a(g)(2)(B).

**B.  Failure to Maintain Records with Accuracy.**

80.     Ms. Rosales's arrest record is inaccurate—it says she was arrested when she was not.

81.     Defendants intentionally and willfully refused and failed to correct Ms. Rosales's arrest record despite knowing that it was false.

82.     The accuracy of Ms. Rosales's arrest record is necessary to assure fairness in decisions relating to her ability to access certain data or physical locations in relation to her employment, or even to be employed at all.

83.     Ms. Rosales has already suffered harm as result of her employer's reliance the inaccurate arrest record: she was unable to work as an intelligence analyst because she could not access certain information, she was unable to gain access to at least one Texas Department of Public Safety facility, she lost employment supporting the Drug Enforcement Administration, and she has been denied any opportunity to return to ADOS status.

84.     Accordingly, under this claim, Ms. Rosales is entitled to monetary relief for actual damages—but no less than $1,000—sustained as a result of Defendants' refusal and failure to amend her inaccurate arrest record. *See* 5 U.S.C. § 552a(g)(4)(A).

85.     In addition, Ms. Rosales is entitled to the costs of the action and reasonable attorney's fees as determined by this Court. *See* 5 U.S.C. § 552a(g)(4)(B).

<u>**COUNT III**</u>
**Violations of the Administrative Procedure Act, 5 U.S.C. § 701, *et seq.***
**(Against All Defendants)**

86.     Ms. Rosales incorporates by reference all preceding paragraphs.

87.     The APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. Judicial review is appropriate because Defendants' actions constitute "final agency action for which there is no other adequate remedy." 5 U.S.C. § 704.

88.     The APA prohibits agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). In addition, the APA prohibits agency actions that are "contrary to constitutional right, power, privilege, or immunity" or are "without observance of procedure required by law." 5 U.S.C. § 706(2)(C) & (D).

89.     First, whether motivated by bureaucratic expediency or recklessness, Defendants' actions in creating records that falsely report a servicemember as having been arrested are arbitrary, capricious, an abuse of discretion, and are otherwise not in accordance with the law.

90.     Second, Defendants' failure and refusal to amend or correct Ms. Rosales's records is arbitrary, capricious, and an abuse of discretion. Defendants have absolutely no basis in fact or law for such refusal. Since at least May 2021, Defendants have had actual knowledge that Ms. Rosales was never arrested and have been asked to correct the inaccuracy. Correcting or expunging Ms. Rosales's false arrest record requires little effort on the part of Defendants. But by simply refusing to do anything about Ms. Rosales's false records, Defendants apparently insist on maintaining a course of action that violates Ms. Rosales's rights and federal laws.

91.     Statutes and regulations that contain duties and procedures meant to protect Ms.

Rosales, and which Defendants violated, include but are not limited to:

      a.   The FBI's duty to ensure the accuracy of the criminal records it maintains under 28 U.S.C. § 534 and regulations promulgated thereunder;

      b.   Army CID's duty to ensure the accuracy and completeness of the information on fingerprint cards and CHRI that it sends to the FBI pursuant to 28 C.F.R. § 20.33 and AR 195-2; and

      c.   Army CID's duty to provide some notice to Ms. Rosales pursuant to DoDI 5505.11 and AR 195-2.

92.     Under this claim, Ms. Rosales is entitled to have this Court compel agency action unlawfully withheld pursuant to 5 U.S.C. § 706(1) and to have this Court hold unlawful and set aside inappropriate agency action pursuant to 5 U.S.C. § 706(2).

<u>**COUNT IV**</u>
**Bivens Claim**
**(Against Unknown Officers and Employees of the Department of Defense and Federal Bureau of Investigation, in their individual capacities)**

93.     Ms. Rosales incorporated by reference all preceding paragraphs.

94.     Upon information and belief, Defendants created, maintained, and distributed Ms. Rosales's false, illegal arrest record despite knowing that she was never arrested, in violation of her due process rights under the Fifth Amendment. Then, they proceeded to discriminate against Ms. Rosales in regards to her employment as a result of that false record.

95.     In effect, Defendants constructively arrested, or seized, Ms. Rosales without the prerequisite due process afforded to her under the Fifth Amendment and then punished her for it.

96.     As a result, Ms. Rosales lost her position of employment, has and will continue to suffer extreme mental anxiety while her false arrest records exists, and will suffer further harm.

97.     Ms. Rosales is further entitled to monetary relief under this claim.

**DECLARATORY RELIEF**

98.    Ms. Rosales is entitled to declaratory relief pursuant to 28 U.S.C. §§ 2201-2202.

Ms. Rosales asks the Court to enter judgment declaring as follows:

   a.  Defendants' protocols and processes for reporting servicemember criminal history
       records to the FBI or other civilian law enforcement agencies—including but not
       limited to DoDI 5055.11 and AR 195-2—fail to comply with due process because
       they lack adequate procedural safeguards;

   b.  Defendants' protocols and processes for correcting or amending false and
       inaccurate servicemember criminal history records and records of arrest fail to
       comply with due process and/or the Privacy Act;

   c.  DoD Instruction 5505.11's identical procedure to handle fingerprint cards and
       CHRI for persons who have and have not been arrested is contrary to constitutional
       right, arbitrary, capricious, and an abuse of discretion;

**INJUNCTIVE RELIEF**

99.    Ms. Rosales asks the Court to issue permanent injunctions against, enjoining

Defendants, as well as their officers and employees, agents, delegates, and authorized

representatives, as follows:

   a.  Prohibit Defendants from creating, maintaining, and distributing arrest records for
       persons who were not arrested;

   b.  Cease distribution of Ms. Rosales's and the Class's false arrest records, return the
       FD-249s (or alternate form) to the contributing DoD Law Enforcement Agency,
       and delete the offending arrest records from all NCIC databases;

   c.  Defendants shall create adequate procedures to allow persons to challenge the
       creation, maintenance, and distribution of false arrest records; and

   d.  Defendants shall create adequate procedures to ensure that arrest records are created
       only for persons who were arrested.

## **ATTORNEY'S FEES**

100.    Plaintiff requests payment of her reasonable attorney's fees and costs. Plaintiff is entitled to recover reasonable and necessary attorney's fees under 28 U.S.C. § 2412 and 5 U.S.C. § 552a(g)(2)(B) & (4)(B).

## VI.    PRAYER FOR RELIEF

For these reasons, Plaintiff asks the Court to award judgment in her favor, including

    a.  declaratory and injunctive relief;

    b.  monetary relief;

    c.  Prejudgment and post-judgment interest as allowed by law;

    d.  Attorney's fees;

    e.  Costs of suit; and

    f.  All other relief, in law and in equity, to which Plaintiff may be justly entitled.


Dated: October 26, 2023                    Respectfully submitted,

**O'CONNELL WEST, PLLC**

*/s/ Douglas K. O'Connell*
**Douglas K. O'Connell**
Texas State Bar No. 00792028
505 West 12th Street, Suite 200
Austin, TX 78701
Telephone: (512) 547-7265
doug@oconnellwest.com


**MCDOWELL HETHERINGTON LLP**

By: */s/ William B. Thomas*
**William B. Thomas**
Texas State Bar No. 24083965
**William X. King**
Texas State Bar No. 24027496

**Richard R. Hood** *(pending admission)*
Texas State Bar No. 24124181
First City Tower
1001 Fannin, Suite 2400
Houston, Texas 77002
Telephone:  713-337-5580
Facsimile:  713-337-8850
Email: William.Thomas@mhllp.com
        William.King@mhllp.com
        Richard.Hood@mhllp.com

**ATTORNEYS FOR DENISE A. ROSALES**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served on October 26, 2023, on all counsel of record.

*/s/ William B. Thomas*
William B. Thomas