IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DENISE A. ROSALES, individually and on behalf of herself and all others similarly situated, | § § § § | No. 1:23-cv-00440-DAE |
| | § | |
| *Plaintiff*, | § § | |
| | § | |
| vs. | § § | |
| CHRISTINE WORMUTH, Secretary of the Army, in her official capacity; DEPARTMENT OF THE ARMY; GREGORY D. FORD, Acting Director of the Department of the Army Criminal Investigation Division, in his official capacity; DEPARTMENT OF THE ARMY CRIMINAL INVESTIGATION DIVISION; CHRISTOPER WRAY, Acting Director of the Federal Bureau of Investigation, in his official capacity; FEDERAL BUREAU OF INVESTIGATION; LLOYD J. AUSTIN III, Acting Secretary of Defense, in his official capacity; DEPARTMENT OF DEFENSE; and UNKNOWN OFFICERS and EMPLOYEES of the DEPARTMENT OF DEFENSE and FEDERAL BUREAU OF INVESTIGATION, in their individual capacities,, | § § § § § § § § § § § § § § § § § § § § § | |
| *Defendants*. | § | |

1

<u>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS</u>

Before the Court are three Motions to Dismiss pursuant to Federal

Rules of Civil Procedure 12(b)(1) and 12(b)(6).  The first was filed on December

21, 2023, by the United States Army, Secretary of the Army Christine Wormuth

(in her official capacity), Acting Director of the Department of the Army Criminal

Investigation Division Gregory D. Ford (in his official capacity), and Department

of the Army Criminal Investigation Division (collectively, "Army").  (Dkt. # 46.)

The second was filed on December 21, 2023, by the Federal Bureau of

Investigation and FBI Director Christopher Wray (in his official capacity)

(collectively, "FBI").  (Dkt. # 47.)   The third was filed on February 9, 2024, by the

Department of Defense and Secretary of Defense Lloyd Austin (in his official

capacity) (collectively, "DoD").  (Dkt. # 65.)  Rosales responded to the FBI's

motion on January 16, 2024.  (Dkt. # 53.)   Rosales responded to the Army's

motion on January 16, 2024.  (Dkt. # 54.)  Rosales responded to DOD's motion on

February 23, 2024.  (Dkt. # 67.)   The Army replied on January 23, 2024.  (Dkt. #

58.) The FBI replied on January 23, 2024.  (Dkt. # 59.)  The DOD replied on

March 1, 2024.  (Dkt. # 69.)  The Court held a hearing on May 9, 2024.  Upon

careful consideration of the arguments asserted in the filings—as well as the

arguments presented at the hearing—the Court GRANTS IN PART and DENIES

IN PART the Motions to Dismiss for the following reasons.

## BACKGROUND

### I.    Rosales' Allegations

From June 2020 to February 2021, Plaintiff Denise A. Rosales was deployed to Kuwait as a federalized member of the Texas Army National Guard. (Dkt. # 42 at ¶ 31.)   While in Kuwait, Rosales held a birthday party for her husband with the alleged presence of alcohol.  (Id. at ¶ 32.)  When service members are deployed to certain overseas locations, the consumption of alcohol is strictly prohibited.  (Dkt. # 15-1 at 2.)

According to Army Defendants, an investigation determined there was probable cause to believe the following violations of the Uniform Code of Military Justice ("UCMJ") occurred pertaining to Rosales: obstruction of justice, false official statement, and failure to obey.  (Id. at 2.)

In accordance with DoD and Army policy, Rosales provided her fingerprints on an "Arrest and Institution Fingerprint Form," Federal Document-249 ("FD-249"), which were then submitted to the FBI on January 5, 2021. (Dkt. # 15-4, DODI 5505.11 at ¶ 3.1; CID Regulation 195-1 at 5.23.)

On January 14, 2021, Rosales received a General Officer Memorandum of Reprimand ("GOMOR") for violating General Order Number 1D by hosting a party involving alcohol consumption on Camp Arifjan, Kuwait.  (Dkt. # 15-5); (Dkt. # 42 at ¶ 32.)

Rosales alleges she was not arrested or taken into custody for the incident. (Dkt. # 42 at ¶ 69.)   Nevertheless, Rosales alleges the Department of the Army Criminal Investigation Division ("Army CID") submitted a record to the Federal Bureau of Investigation indicating that Ms. Rosales had been arrested. (Id.)  Federal criminal history databases maintained by the FBI now show that Rosales had been "arrested or received" into custody.  (Id. at ¶ 2.)  Rosales alleges that Defendants, including the Army have refused to amend Rosales's records despite her pleas. (Id. at ¶ 4.)

On November 16, 2021, Army CID denied Rosales's request for amendment.  (Id. at ¶ 38.)  On or about December 21, 2022, over a year after submitting the appeal, Rosales received a letter from the Office of the General Counsel denying her appeal. (Id. at ¶ 40.)

Rosales alleges she has suffered numerous occupational and personal detriments.  (Id. at ¶ 44.)   Rosales lost her position of employment supporting the DEA and not been able to return to her position in the Texas Army National Guard.  (Id. at ¶¶ 44-45.)

Rosales seeks injunctive relief for violations of the Fifth Amendment to the United States Constitution, the Privacy Act, and the Administrative Procedure Act.  (Id. at ¶¶ 50-97.)   She seeks expungement of her arrest record and that the record cease from distribution.  (Id. at ¶ 49.)

4

Rosales also brings her due process claims on behalf of a class defined as "all U.S. Army service members who have been reported as having been arrested or received into custody by any Department of Defense organization to the FBI, but who were not actually arrested or received into custody from six years prior to the filing of the complaint through the date of judgment."  (Id. at ¶ 50.) Rosales alleges that the FBI automatically lists service members as having been "arrested" in NCIC databases upon receipt of the FD-249 form. (Arrest and Institution Fingerprint Card) whether a service member was arrested or not. Rosales alleges that the Army has admitted that false criminal history reports had been created for at least 900 people.  (Id. at ¶ 27.)

II.    Relevant Statutes and Regulations

Department of Defense Instruction ("DODI") 5505.11 requires the Army to collect fingerprints and criminal history record information upon determination of probable cause.  (Dkt. # 15-4, DODI 5505.11 at ¶ 1.2.)  The Army is required to collect fingerprints and criminal history record information on the FD-249 Arrest and Institution Fingerprint Card, or its electronic equivalent.  (Id. at ¶ 3.1.)

Once the Army collects the FD-249, regulations require the Army to submit that information to the United States Army Crime Records Center.  32 C.F.R. § 635.16(a).  The Army Crime Records Center is required to submit that

information to the CJIS Division of the FBI for all service members who are investigated for an offense that is potentially publishable by imprisonment under the UCMJ.  32 C.F.R. § 635.16(a); (Dkt # 15-4, DODI 5505.11 at ¶ 1.2.)

Once the Army creates a record of criminal history, Army regulations allow amendment of the records in limited circumstances at the behest of an individual about whom the record was made. Army Regulation 25-22, Chapter 8. For Army regulations to permit amendment, the records must be inaccurate as a matter of fact.  Id.  A record that is irrelevant, untimely, incomplete, or a matter of judgment cannot be amended at the behest of the requester.  Id.  The requester has the burden to demonstrate the record should be amended.  Id.

## LEGAL STANDARD

### I.    Subject Matter Jurisdiction

The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction," so that "the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist."  Raj v. La. State Univ., 714 F.3d 322, 327 (5th Cir. 2013).

Absent jurisdiction a statute or the Constitution confers, Federal courts lack the power to adjudicate claims and must dismiss an action if subject matter jurisdiction is lacking.  Stockman v. Fed. Election Comm'n, 138 F.3d 144, 151 (5th Cir. 1998) (citing Veldhoen v. U.S. Coast Guard, 35 F.3d 222, 225 (5th

6

Cir. 1994)); see also Fed. R. Civ. P. 12(h)(3); Hooks v. Landmark Indus., Inc., 797
F.3d 309, 312 (5th Cir. 2015). Parties cannot waive the lack of jurisdiction.
Stockman, 138 F.3d at 151; Fed. R. Civ. P. 12(h)(1).

   Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a
complaint for "failure to state a claim upon which relief can be granted."  In
analyzing a motion to dismiss for failure to state a claim, the court "accept[s] 'all
well pleaded facts as true, viewing them in the light most favorable to the
plaintiff.'"  United States ex rel. Vavra v. Kellogg Brown & Root, Inc., 727 F.3d
343, 346 (5th Cir. 2013) (quoting In re Katrina Canal Breaches Litig., 495 F.3d
191, 205 (5th Cir. 2007)).

## II. Pleading Standard

   To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead
"enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp.
v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the
plaintiff pleads factual content that allows the court to draw the reasonable
inference that the defendant is liable for the misconduct alleged." Ashcroft v.
Iqbal, 556 U.S. 662, 678 (2009).  But "the tenet that a court must accept as true all
of the allegations contained in a complaint is inapplicable to legal conclusions."
Id.

DISCUSSION

Rosales has filed claims under the Privacy Act, the Administrative Procedure Act ("APA"), and due process clause of the Fifth Amendment of the United States Constitution.  The Court will evaluate each in turn.

I.    Privacy Act

Congress concluded that "to protect the privacy of individuals identified in information systems maintained by federal agencies, it is necessary and proper for Congress to regulate the collection, maintenance, use, and dissemination of information by such agencies."  Privacy Act of 1974, Pub. L. No. 93-579, § 2(A)(5) (Dec. 31, 1974).

The Privacy Act "'safeguards the public from unwarranted collection, maintenance, use and dissemination of personal information contained in agency records . . .  by allowing an individual to participate in ensuring that his records are accurate and properly used.'"  Jacobs v. National Drug Intelligence Center, 423 F.3d 512, 515 (5th Cir. 2005) (quoting Henke v. U.S. Dep't of Commerce, 83 F.3d 1453, 1456 (D.C.Cir.1996)).

The Privacy Act "contains a comprehensive and detailed set of requirements for the management of confidential records held by Executive Branch agencies."  F.A.A. v. Cooper, 566 U.S. 284, 287 (2012).  An individual may bring a civil action against an agency whenever the agency: (1) fails to amend an

8

individual's records pursuant to his request; (2) an agency's failure to maintain an individual's records with accuracy, relevance, timeliness, and completeness; and (3) an agency's failure to comply with other Privacy Act provisions, which has "an adverse effect on the individual. See id; 5 U.S.C. § 552a(g)(1)(A)-(D).

A. Proper Defendants Under the Privacy Act

Under the doctrine of sovereign immunity, suits cannot be brought against the United States unless it has expressly consented to be sued. United States v. Testan, 424 U.S. 392, 399 (1976); United States v. Sherwood, 312 U.S. 584, 586 (1941); United States v. Shaw, 309 U.S. 495, 500–501 (1940).

Pursuant to 5 U.S.C. § 552a(g)(1), the United States only waives sovereign immunity for suits "against the agency."  5 U.S.C. § 552a(g)(1) ("[T]he individual may bring a civil action against the agency"); see also Dick v. Holder, 67 F. Supp. 3d 167, 176 (D.D.C. 2014).

The Privacy Act provision for civil remedies applies only against federal agencies, not individuals. Bruce v. United States, 621 F.2d 914, 916 n. 2 (8th Cir.1980); see also Unt v. Aerospace Corp., 765 F.2d 1440, 1447 (9th Cir. 1985).  Therefore, the individual defendants are not proper defendants and are dismissed from Rosales's complaint.

The Army argues that Rosales improperly names the Department of the Army Criminal Investigation Division ("CID") as a defendant.   The Army

argues there is no waiver of sovereign immunity for suits against sub-departments under the Privacy Act.

5 U.S.C. § 552(f) includes in the definition of "agency" "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the government (including the Executive Office of the President), or any independent regulatory agency."  Section 551(1) defines "agency" as "each authority of the Government of the United States, whether or not it is within or subject to review by another agency."

Courts have not always been consistent when it comes to the propriety of naming components of executive departments.  Compare Lair v. Dep't of Treasury, No. CIV.A. 03-827 (RCL), 2005 WL 645228, at *3 (D.D.C. Mar. 21, 2005) (holding the Secret Service, ATF, and EOUSA as proper defendants to a Privacy Act claim)  with Scott v. United States Attorney Offices, Civ. A. No. RDB-18-725, 2019 WL 2078632, *1 n.1 (D. Md. May 10, 2019) (citing Adionser v. Dep't of Justice, 811 F. Supp. 2d 284, 290 (D.D.C. 2011)) ("Because EOUSA, FBI, DEA, and BOP are components of DOJ, and it is DOJ that is an agency covered by FOIA, DOJ is the proper defendant in this case.")

The Court finds that the Army, not the CID, is the proper Defendant. Plaintiff has already sued the Army.  By dismissing CID, the Court does not

10

preclude Rosales from effectuating relief.  While CID may be the office that

directly interacts with Rosales, it is not the proper Defendant under the statute.

Courts that analyze similar statutes, such as FOIA, commonly dismiss components

of executive departments.  Blackwell v. FBI, 680 F.Supp.2d 79, 86 n. 1 (D.D.C.

2010).  Therefore, the Court will continue its analysis by focusing on the Army as

the "military department" under 5 U.S.C. § 552(f) that is subject to suit.

      B.  Standing

      To establish standing, a plaintiff must demonstrate that (1) she has

suffered, or will suffer, an injury that is (a) "concrete" and "particularized" and (b)

"actual or imminent"; (2) "fairly traceable to the challenged action"; and (3)

"redressable by a favorable ruling."  Clapper v. Amnesty Int'l USA, 568 U.S. 398,

409 (2013); NiGen Biotech, LLC v. Paxton, 804 F.3d 389, 396 (5th Cir. 2015);

McCardell v. U.S. Dep't of Hous. & Urb. Dev., 794 F.3d 510, 517 (5th 2015).  A

plaintiff must demonstrate standing separately for each form of relief sought.

Friends of the Earth Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 167, 185

(2000).  The party seeking jurisdiction bears the burden of establishing standing,

Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992).  The parties do not dispute

traceability.  Rather, the parties contest whether Rosales suffered an injury-in-fact

and whether her claims are redressable.

      1.  Injury in fact

11

Rosales pleads both occupational and personal detriments.  Rosales alleges she lost her position of employment supporting the DEA and not been able to return to her full-time Active Duty Operational Support ("ADOS") position in the Texas Army National Guard.  (Dkt. # 42 at ¶¶ 44-45.)  She also pleads that she suffers a stigma of having an arrest record.  (Dkt. # 42 at ¶ 59.)

Based on the facts alleged, this Court agrees that Rosales has met the first prong of Article III standing.  Tarlton v. Saxbe, 507 F.2d 1116, 1123 (D.C. Cir. 1974) (establishing that "dissemination of inaccurate arrest or conviction records in fact restricts liberty"); Menard v. Mitchell, 430 F.2d 486, 490 (D.C. Cir. 1970) ("There is an undoubted 'social stigma' involved in an arrest record" (citing United States v. Dionisio, 410 U.S. 1, 10 (1973)).

2. Redressability

For Article III standing purposes, "redressability" refers to a non-speculative likelihood that the injury can be remedied by the requested relief; plaintiffs' injuries are "redressable" if their requested relief can compensate them for their losses or eliminate any effects caused by the defendants' challenged conduct.  Lujan, 504 U.S. at 560–61, 112 S.Ct. 2130)

The Army claims lack of redressability because the records are no longer in their custody or control.  The Army claims it cannot direct a correction of a different agency's record, assuming the record is subject to correction.

The Court disagrees with the Army's interpretation of both the law and the facts as it relates to standing.    Indeed, the FBI concedes in its Motion to Dismiss, "pursuant to 28 C.F.R. § 16.34, if, after reviewing his identification record, a subject believes it is incorrect and wishes to change, correct, or update the alleged deficiency, *he may apply directly to the agency which contributed the questioned information.*"  The FBI notes that in order for them to amend the record, Rosales must go to the Army first.  Moreover, the Army has already altered the record by adding a new disposition, showing that they have the ability to amend the record.  (Dkt. # 54 at 17.)

In essence, the FBI and the Army attempt to pin the allegation against each other.  By doing so, they attempt to create a situation in which no one could have standing under the Privacy Act.  This "interagency finger-pointing" does not bar Rosales from making a claim under the Privacy Act.  28 C.F.R. § 16.34 provides the Army can correct an FBI identification record by submitting to the agency a request for amendment.  Lastly, at the May 9 hearing, the Army "admit[ed] that it does have authority to change or withdraw the record as submitted to the FBI."  Therefore, the Court finds that the Army has the ability to effectuate the necessary relief.

C. <u>Application of U.S.C. § 552a(j)(2)</u>

An individual may bring a civil action against an agency whenever the agency decides under subsection (d)(3) not to amend an individual's record in accordance with his request or fails to make such review in conformity with that subsection.

However, the Privacy Act exempts certain records from having to be amended.  Section 552a(j) provides that any agency may promulgate rules "to exempt any system of records within the agency" from specified Privacy Act provisions if the agency include[s] in the statement required under § 553c of this title [requiring notice to interested persons giving them an opportunity to participate in the rule making], the reasons why the system of records is to be exempted from a provision of this section.

The Privacy Act authorizes agencies to exempt themselves from many of its provisions, including amending criminal investigative record systems maintained by the agency or a "component" thereof.   The record systems must be "maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws" and must consist of "information compiled for the purpose of a criminal investigation."  5 U.S.C. § 552a(j)(2).

      1.    <u>Army Records</u>

In this case, the Army has promulgated such a regulation.  The Army promulgated rule 32 C.F.R. § 310.15(c)(2) to exempt the CID's system of records, which includes reports of investigations.  The regulation applies to "[a]ll portions of this system of records which fall within 5 U.S.C. § 552a(j)(2)."   The regulation also sets forth the reasons for the exemption.  See 32 C.F.R. § 310.15(g)(iii).

Rosales argues that the reasons listed for the exemption in 32 C.F.R. § 310.15 do not apply to this case.  Rosales argues that the purpose for the exemption no longer fits because there is no ongoing investigation or law enforcement goal. Rosales urges this Court take a case-by-case approach for exempting each document or set of documents under the exemption provision.

Federal courts have not taken such an individualized approach.  See Aquino v. Stone, 957 F.2d 139, 142 (4th Cir. 1992) ("While we can understand that Aquino would want a more individualized evaluation . . .  particularly when he believes that an investigatory report is inaccurate, we do not think that the Privacy Act was intended to provide an amendatory procedure for records about investigations into violations of the criminal laws.")  "The exemption authorized by 5 U.S.C. § 552a(j)(2) is a general exemption which applies to a whole system of records of the agency and therefore the Privacy Act does not require that a regulation's rationale for exempting a record from disclosure apply in each

15

particular case." Wentz v. Department of Justice, 772 F.2d 335, 337 (7th

Cir.1985), cert. denied, 475 U.S. 1086, 106 S.Ct. 1470, 89 L.Ed.2d 726

(1986) (quoting Shapiro v. Drug Enforcement Agency, 721 F.2d 215, 218 (7th Cir.

1983)).

Because the Court concludes that the files in this case were generated

for the purpose of a law enforcement investigation, such files were exempted by

regulation promulgated under § 552a(j) of the Privacy Act.  Therefore, the refusal

by the Army to amend those files cannot give rise to a civil action under §

552a(g)(1)(A).

### 2.  FBI Next Generation Identification System and NCIC

The FBI has similarly promulgated its own regulations exempting

certain records from amendment under the Privacy Act.  Both the Next Generation

Identification System and NCIC have been exempt from individual access and

amendment provisions of the Privacy Act.  See 28 C.F.R. § 16.96(g).

In Doe v. FBI, plaintiff obtained access to a background report that

had been prepared by the FBI.  936 F.2d 1346 (D.C. Cir. 1991).  Believing much

of the information in the report to be inaccurate, Doe requested the FBI to expunge

certain material.  Id. at 1348.  After the FBI denied his request, Doe brought a

Privacy Act claim in district court seeking monetary damages and expungement of

both the report and the records in the FBI's investigatory files from which the objectionable information had been derived.  Id.

The D.C. Circuit found that the underlying investigatory records from which the FBI's background report was derived were compiled for "law enforcement purposes," and thus fall within the scope of an FBI regulation exempting such records from the statute's amendment requirements.  Id.

In Doe, the D.C. Circuit asked whether the FBI's investigatory information lost its exempt status when it was subsequently used, in altered form, for a non-law enforcement purpose.  Id. at 1356.  Based on Supreme Court precedent in FBI v. Abramson, 456 U.S. 615, (1982), the Court found that records originally compiled for law enforcement purposes does not lose its exempt status when later summarized in records compiled for non-law enforcement purposes.  Id. While Abramson related to FOIA, the D.C. Circuit found that given the congruence of the relevant statutory language, Abramson's holding cannot be ignored in the Privacy Act context.  Id.

Accordingly, Rosales has no individual right of access, to amend, or to seek damages for inaccuracies in the FBI's NCIC or NGI records under the Privacy Act. 5 U.S.C. § 552a(j)(2); see also Roggio v. F.B.I., No. 08-4991 (ES), 2011 WL 3625042, at *8 (D.N.J. Aug.  17, 2011) (recognizing exemption of NCIC criminal history records); Sieverding v. U.S. Dep't of Justice, 693 F.Supp.2d

17

93, 102–03 (D.D.C. 2010) (same); <u>Vondette v. F.B.I.</u>, No. Civ.A. 04- 0665(GK),
2005 WL 913280, at *1–2 (D.D.C. Apr. 17, 2005) (same).

II.     <u>APA</u>

      Before turning to the merits of these arguments, the Court notes that
the APA provides a waiver of sovereign immunity, and cause of action, only with
respect to "agency action," 5 U.S.C. § 702.  Therefore, APA claims against the
individual defendants will be dismissed.

      The type of APA review that Rosales seeks is limited to "final agency
action for which there is no other adequate remedy in a court."  5 U.S.C. § 704.
This limitation "makes it clear that Congress did not intend the general grant of
review in the APA to duplicate existing procedures for review of agency action."
<u>Bowen v. Massachusetts</u>, 487 U.S. 879, 903, 108 S.Ct. 2722, 101 L.Ed.2d 749
(1988).  Rosales' APA claim relies on the same set of facts as her Privacy Act
violation, for which Congress created a comprehensive scheme for judicial review.
<u>See</u> 5 U.S.C. § 552a(g)(1)(A).   As such, a plaintiff "cannot bring an APA claim to
obtain relief for an alleged Privacy Act violation."  <u>Westcott v. McHugh</u>, 39
F.Supp.3d 21, 33 (D.D.C. 2014); <u>see also</u> <u>Wilson v. McHugh</u>, 842 F.Supp.2d 310,
320 (D.D.C. 2012) (same); <u>Tripp v. Dep't of Def.</u>, 193 F.Supp.2d 229, 238 (D.D.C.
2002) (same); <u>Mittleman v. U.S. Treasury</u>, 773 F.Supp. 442, 449 (D.D.C. 1991)
(same).

Just because Rosales' claims fail under the Privacy Act does not automatically afford review under the APA.  Indeed, in <u>Harrison v. Fed. Bureau of Prisons</u>, the Court held that there was no privacy violation because the Bureau exempted the relevant system of files.  248 F. Supp. 3d 172, 182 (D.D.C. 2017), on reconsideration in part, 298 F. Supp. 3d 174 (D.D.C. 2018).  Still, the Court also held that plaintiff could not bring a claim under the APA.

Nevertheless, the Army followed administrative procedures in its denial of Rosales' requests because the record fell under an exempted system of record.   Rosales's main contention is that her request included an admission by her unit JAG officer that she was never arrested.  This evidence was allegedly ignored by the Army Defendants.  However, in the face of an exempt system of record, the Court cannot find that the action was arbitrary and capricious.

As to the FBI, Rosales does not challenge any specific action.  <u>See Doe v. FBI</u>, No. CV PX-18-0707, 2019 WL 280268, at *3 (D. Md. Jan. 22, 2019) (dismissing an APA claim related to an inaccurate FBI identification record for lack of alleged "final agency action" from which the plaintiff sought relief).  Rosales does not allege that she has made any application to the FBI or followed any FBI administrative process under the Privacy Act to amend her FBI record.  Rosales does not allege that the FBI received an official communication directly from the contributing agency, the Army, but failed to make changes necessary in

accordance with the information received.  Therefore, the Court does not find that there is any final agency action taken by the FBI, which could be arbitrary or capricious.

As to the Department of Defense ("DoD"), the APA claim fails for the same reason as the FBI.  Rosales points to no action DoD took with respect to Rosales.  Rosales does not allege any contact with DoD.  Having engaged in no administrative process with DoD and having not identified a DoD final action, the Court dismisses the APA claim against DoD.

III.    Fifth Amendment

The Due Process Clause of the Fifth Amendment guarantees that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law."  U.S. CONST. amend. V.   "The touchstone of due process is protection of the individual against arbitrary action of government."  Wolff v. McDonnell, 418 U.S. 539, 558 (1974).

A. Procedural Due Process

In evaluating a procedural due process claim, the Court "must determine (1) whether [plaintiff] possessed a liberty or property interest and, if so, (2) what process he was due before he could be deprived of that interest." Ciambriello v. County of Nassau, 292 F.3d 307, 313 (2d Cir. 2002).

When considering a motion to dismiss, the court accepts as true the well-pled factual allegations in the complaint and construes them in the light most favorable to the plaintiff. Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002). Rosales asserts that the FBI currently keeps a record saying she has been charged and arrested for crimes she did not commit. (Dkt. # 42 at ¶ 15.) Rosales pleads that she was never "informally" or formally arrested, taken into custody, or received into custody. (Id. at ¶ 33.) Rosales pleads no authority found probable cause to arrest or take her into custody and no probable cause affidavit was ever created. (Id.) Rosales pleads there is no record of being arraigned, "magistrated," or having an initial appearance in any military or civilian court. (Id.) Rosales pleads she was never restricted, confined to quarters, suspended from duties, or disarmed. (Id.) Rosales pleads she received no punishment or sanction other than an administrative reprimand. (Id.)

At a hearing on May 9, 2024, the Army, FBI, and Department of Defense presented a record to the Court that clearly says Rosales has been "charged"[1] with (1) obstruction of justice, (2) false official statement, and (3)

---

[1] A District Court may consider outside matter attached to a motion to dismiss without first converting it into a motion for summary judgment if the material is pertinent to the question of the District Court's jurisdiction since it is always the obligation of a federal court to determine if it has jurisdiction. In this case, the Court finds it proper to look at the updated disposition from the army on November 9, 2022. The updated record could impact whether Rosales has a non-moot claim. See Kentucky-Tennessee Light and Power Company v. Nashville Coal Co., D.Ky.1941, 37 F.Supp. 728, aff'd 6 Cir. 1943, 136 F.2d 12; Fireman's Fund Ins. Co. v. Railway Express Agency, 6 Cir. 1958, 253 F.2d 780; Williams v. Minnesota Min. & Mfg. Co.,

failure to obey.  Rosales says this is false and the procedures in place do not afford

a reasonable opportunity to contest such a determination.

Rosales has come to this Court to say, "enough is enough" and that

the Defendants collectively have immunized themselves from having to change her

record.  While statutorily the Privacy Act may not provide a remedy, the due

process clause of the Constitution affords a separate avenue for relief and promises

that the government will not "deprive[] of life, liberty or property without due

process of law."  U.S. CONST. amend. V; amend. XIV, § 1.

Under the due process clause, Rosales attempts to sound the alarm

bells to a system in which she has been left helpless by agencies who have each

said "not my problem."  The agencies allegedly engage in "interagency finger-

pointing" to absolve themselves from taking any responsibility.  (Dkt. # 54 at 7.)

By pointing to each other, Rosales pleads that she has nowhere else to turn.

The theory outlined by Rosales is as follows:  The problem begins

with how the records are created.  According to Rosales, whether or not veterans

are actually arrested, a record saying the words "arrested" is sent to the FBI upon a

judgment of probable cause.  (Dkt. # 42 at ¶ 61.)  DoDI 5505.11 requires that, upon

a determination of probable cause, all service members who are investigated for a

---

S.D.Cal.1958, 14 F.R.D. 1. State of Ala. ex rel. Baxley v. Woody, 473 F.2d 10, 12 (5th Cir. 1973).

range of offenses listed in the Uniform Code of Military Justice ("UCMJ") as punishable by imprisonment must have their fingerprints taken and criminal history record created. (Dkt. # 42 at ¶ 61.) However, according to Rosales, nothing in DoDI 5505.11 directs or authorizes the armed forces to report to the FBI that a service member has been arrested if that did not in fact occur. (Id.). Rosales pleads that is exactly what happens.

Once the FD- 49 form is transmitted to the FBI, the service member—who may never have been arrested—is listed in the FBI's NCIC system as having been arrested. (Id. at ¶ 24.)  Rosales believes that the FBI automatically lists service members as having been "arrested" in NCIC databases upon receipt of the FD-249 form. (Id. at ¶ 25.)   Rosales pleads that after years of complaints, Army leaders acknowledged on November 3, 2022, that false criminal history reports had been created for at least 900 people. (Id. at ¶ 27.)

Rosales, now attempting to modify the record to accurately state the events that occurred, must go to the Army or the FBI.   In this case, Rosales wishes the record to state that the charges were dropped, and she only received an administrative reprimand. (Id. at ¶ 33.)

At this point, Rosales's due process concerns come into play.  If she goes to the FBI, the institution tells her to file a petition with the Army.  If she goes to the Army, the institution tells her to go to the FBI. (Dkt. # 54 at 7.)  Rosales

pleads she is now stuck in a pickle between two bodies who are pointing at each other without the ability to effectuate any review or mode for relief. (Id.)

At the hearing, the Army admitted that it has the power to change the record. However, the Army states that the ABCMR was established by the Secretary of the Army to correct errors in military records pursuant to her statutory authority. 32 C.F.R. § 581.3. That regulation states that the Secretary of the military "may correct any military record . . . when the Secretary considers it necessary to correct an error or remove an injustice." (Id.)

The ABCMR is the only defense that the Army gives for the due process claim. However, at the May 9 hearing, counsel for Rosales stated that this process is futile. Indeed, Rosales states that no matter how justified she or other service members might be in their claim, the ABCMR rubber stamps a denial of these petitions. Honig v. Doe, 484 U.S. 305, 327 (1988) ([plaintiff] may bypass the administrative process where exhaustion would be futile or inadequate.) Moreover, exhaustion may be excused when an irreparable injury will result absent immediate judicial review. Rhodes v. United States, 574 F.2d 1179, 1181 (5th Cir. 1978). Rosales turns to this Court because the ABCMR and the administrative process does not practically do anything. *In reality, not on paper*, Rosales argues the Army dismisses complaints regardless of whether a modification should be

made in the interest of justice.  Rosales turns to a neutral Article III court to beg for some type of fair process that will allow her to meaningfully challenge her record.

As pled, the Court finds that the system is plausibly violating her due process rights.  Defendants have not provided any explanation as to why they have not changed this record and even admitted at the hearing that she was "not changed" but only administratively reprimanded.  To make matters worse, Defendants provided no explanation as to why they would not change her record. Seemingly, there is no reason why Defendants would want inaccurate information in their system.  One could only speculate as to why the Army would defend a record that is not accurate of the events that took place.

The consequences have plausibly been severe.  Rosales lives day to day with this alleged false arrest record clouding her ability to seek employment. Rosales pleads she has lost jobs, job opportunities, security clearances, had promotions held up, and suffered the stigma of having an arrest record.  Tarlton v. Saxbe, 507 F.2d 1116, 1123 (D.C. Cir. 1974) (establishing that "dissemination of inaccurate arrest or conviction records in fact restricts liberty"); Menard v. Mitchell, 430 F.2d 486, 490 (D.C. Cir. 1970) ("There is an undoubted 'social stigma' involved in an arrest record" (citing United States v. Dionisio, 410 U.S. 1, 10 (1973)); see also Brandt v. Board of Co-op. Educ. Servs., 820 F.2d 41, 45 (2d Cir.1987) (holding that a liberty interest would be implicated where stigmatizing

charges "were placed in the employee's file during the course of his termination" and "were likely to be disclosed to future employers"). Rosales has plausibly pled that the FBI has and will continue to distribute her false arrest record to current and prospective employers. And while there is still a question of whether the record has been disseminated "publicly," the Court finds that Rosales has put forward plausible facts to suggest so. Who has received the record is a question of fact that can be handled at a later stage in this litigation.

Again, Rosales has plausibly pled that the record is not accurate. She has suffered a harm that is protected under the due process clause. Whether or not the record is accurate, is a factual dispute that can be resolved with evidence at a later proceeding. Defendants have defended the claim by pointing to an alternative mechanism. However, this route is plausibly inadequate and hopeless. Therefore, the Court finds that Rosales has plausibly pled a due process claim.

On this claim, the Court finds it proper to deny both the Army and DoD's motion. The procedural due process claims stem from DoD procedure 5505.11. The fact that this DoD policy has led to the due process claim makes it plausible that DoD is allowing the creation of false arrest records.

The due process claim against the FBI will be dismissed. As a depository of the information, the FBI is not the proper institution to afford the remedy that Rosales is looking for.

B.  Substantive Rights

"The first step in [a] substantive due process analysis is to identify the constitutional right at stake."  Hurd v. Fredenburgh, 984 F.3d 1075, 1087 (2d Cir. 2021), cert. denied, 142 S. Ct. 109 (2021) (quoting Kaluczky v. City of White Plains, 57 F.3d 202, 211 (2d Cir. 1995)).  "Next, the plaintiff must demonstrate that the state action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."  Southerland v. City of New York, 680 F.3d 127, 151-52 (2d Cir. 2012)).  To prevail on a claim alleging a violation of substantive due process, a claimant must establish that the governmental conduct at issue was "so outrageously arbitrary as to constitute a gross abuse of governmental authority."  Natale v. Town of Ridgefield, 170 F.3d 258, 263 (2d Cir.1999) (citing County of Sacramento v. Lewis, 523 U.S. 833, 845–46, (1998); Silverman v. Barry, 845 F.2d 1072, 1080 (D.C.Cir. 1988)).

"Substantive due process protects only those interests that are 'implicit in the concept of ordered liberty.'" Loc. 342, Long Island Pub. Serv. Emps. v. Town Bd. of Town of Huntington, 31 F.3d 1191, 1196 (2d Cir. 1994). Beyond the rights guaranteed by the first eight Amendments, "[t]he protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." Albright v. Oliver, 510 U.S. 266, 272 (1994).  Distinct from procedural due process, substantive due

process "bar[s] certain government actions regardless of the fairness of the procedures used to implement them." Daniels v. Williams, 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). "Government actions that burden the exercise of those fundamental rights or liberty interests are subject to strict scrutiny, and will be upheld only when they are narrowly tailored to a compelling governmental interest." Seal v. Morgan, 229 F.3d 567, 574–75 (6th Cir. 2000).   Under the doctrine of judicial self-restraint, courts must "exercise the utmost care" when defining or developing rights in this area.  Collins v. City of Harker Heights, Tex., 503 U.S. 115, 125 (1992).

          The Court does not find that Rosales has met this high bar in her pleadings.  To begin, she has not identified a fundamental right in her Complaint. While Rosales is correct that her reputation is a protectable interest, she does not plead or supply authority holding that the right to one's reputation is a fundamental right.  The list of fundamental rights is short, and reputation is not on it.  See Lambert v. Hartman, 517 F.3d 433, 444 (6th Cir. 2008).  Even if a liberty interest exists in "one's reputation[, it] does not necessarily mean that such an interest is either 'fundamental' or 'inherent in the concept of ordered liberty.'"  Lambert, 517 F.3d at 444 (quoting Does v. Munoz, 507 F.3d 961, 964 (6th Cir. 2007)).  "Only when 'fundamental' rights are implicated does a privacy concern take on constitutional dimensions."  Jarvis v. Wellman, 52 F.3d 125, 126 (6th Cir.1995).

Moreover, although courts have held that a stigma-plus liberty interest is an actionable under a procedural due process claim, it is not a fundamental right protected by substantive due process." Hogan v. City of Fort Walton Beach, 817 F. App'x 717, 723 (11th Cir. 2020); see also Segal v. City of New York, 459 F.3d 207, 213 (2d Cir. 2006) ("[S]tigma plus is a species within the phylum of procedural due process claims[.]"); Doe v. Mich. Dep't of State Police, 490 F.3d 491, 502 (6th Cir. 2007).

However, it is not clear from the pleadings that the liberty interest pled is one of privacy or one of reputational harm.  Rosales alleges that she was denied substantive due process rights to liberty and property when the Army allegedly, "creat[ed], maintain[ed], and disseminat[ed] false records of arrest, and refus[ed] to correct those records."  (Dkt. # 42 at ¶ 66.)  However, Rosales does not identify the fundamental right.

Both Rosales and Defendants engage in a debate over the proper reading of Sims v. Fox, 505 F.2d 857, 862 (5th Cir. 1974).  Defendants cite Sims v. Fox for the proposition that (1) liberty is not infringed by the mere presence of derogatory information in confidential files and (2) the government has not infringed liberty unless it perpetuates untrue charges.  See also Kaprelian v. Texas Woman's Univ., 509 F.2d 133, 137 (5th Cir. 1975).

However, <u>Sims</u> nor <u>Kaprelian</u> mentions substantive due process. Both cases seem to be rooted in procedural due process. Therefore, as it relates to the present motion, neither <u>Sims</u> nor <u>Kaprelian</u> are controlling. The distinction between substantive and procedural due process cannot be overlooked. Substantive due process requires Rosales to articulate a fundamental right and plead facts on the gross abuse of governmental authority.

Rosales has also not pled facts on whether the official conduct "shocks the conscience." <u>Cty. of Sacramento v. Lewis</u>, 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). "Proof of intent to harm is usually required, but in some cases, proof of deliberate indifference, an intermediate level of culpability, will satisfy this substantive due process threshold." <u>Terrell v. Larson</u>, 396 F.3d 975, 978 (8th Cir. 2005).

Indeed, there is no claim that the conduct was "inspired by malice or sadism" nor does it amount to a "brutal and inhumane abuse of official power." <u>Webb v. McCullough</u>, 828 F.2d 1151, 1158 (6th Cir. 1987) (quoting <u>Hall v. Tawney</u>, 621 F.2d 607, 613 (4th Cir.1980)).

Defendants argue that any due process violations that is narrowly tailored and serves a compelling interest because the Army has an interest in maintaining law enforcement information pertaining to a criminal investigation. The Court agrees that this is a legitimate interest, but it is not relevant to the

present case.  Here, there is no governmental interest in maintaining an incorrect criminal database.  Therefore, the Court will not rest its current decision on Defendant's purported compelling interest.

Before concluding, the Court will note that it cannot determine whether or not Rosales' arrest is accurate at the Motion to Dismiss stage.  The Court is limited to the four corners of the Complaint.  Moreover, on November 9, 2022, the FBI received and revised Rosales' record based on an updated disposition from the United States Army.  (Dkt. # 18-1 at ¶ 8.)  None of the Defendants have come forward and make a clear statement to the Court that Rosales record is false.  Defendants only assert that probable cause existed for facing charges.  That does not mean that Rosales was in fact arrested.

CONCLUSION

For the foregoing reasons, the Court dismisses the FBI, CID, and individually named defendants in their official capacities.  The Court dismisses all claims under the Privacy Act and APA.  The Court also dismisses claims under substantive due process.  However, the Court denies the Army and DoD's motion to dismiss the procedural due process claims.  Because Plaintiff has had three attempts to sufficiently allege her claims, those dismissed are with prejudice.

**IT IS SO ORDERED**
**DATED:** Austin, Texas, May 23, 2024.

31

_____

David Alan Ezra
Senior United States District Judge